BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP
ALAN SCHULMAN  (Bar No. 128661)
ROBERT S. GANS  (Bar No. 214420)
BLAIR A. NICHOLAS  (Bar No. 178428)
NIKI L. MENDOZA  (Bar No. 214646)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:  (858) 793-0323

Attorneys for Lead Plaintiff
Otter Creek Partners and
Lead Counsel for the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CLARENT CORPORATION SECURITIES LITIGATION | Master File No. C-01-3361 CRB (JCS)<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | Date:   December 1, 2006<br>Time:   10:00 a.m.<br>Dept:   Courtroom 8, 19th Floor<br>Judge:  The Honorable Charles R. Breyer |

NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUNDS; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, that on December 1, 2006, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer at the United States Courthouse, Courtroom 8, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Court-appointed Lead Plaintiff Otter Creek Partners ("Lead Plaintiff") will and hereby does move for entry of an Order: (i) approving the administrative determinations of the Claims Administrator, The Garden City Group, Inc. ("GCG"), accepting and rejecting Claims submitted herein, including GCG's recommendation as to the rejection of one Disputed Claim; (ii) authorizing the inclusion of Class Members who have filed late (but before August 23, 2006), but otherwise valid claim forms to participate in the settlements and receive a distribution of the Net Settlement Funds in accordance with the Court-approved Plan of Allocation of Combined Settlement Proceeds ("Plan of Allocation"); (iii) authorizing GCG to distribute the Net Settlement Funds to Authorized Claimants, based on the Court-approved Plan of Allocation; (iv) authorizing payment of $464,223.57 to GCG for its fees and expenses in connection with the administration of the settlements; (v) authorizing the Claims Administrator to destroy hard copy claim forms and supporting documents one year after distribution of the Net Settlement Funds, and to destroy electronic copies of the same three years after distribution of the Net Settlement Funds; (vi) retaining jurisdiction to consider any further applications concerning the administration of the settlements; and (vii) for such other and further relief as the Court deems appropriate.

In support of this Motion, Lead Plaintiff incorporates the Affidavit of Jennifer M. Keough ("Keough Affidavit") of GCG and all prior papers and proceedings in this action.

WHEREFORE, Lead Plaintiff respectfully requests that this Court enter the [Proposed] Order Authorizing Distribution of Settlement Funds submitted herewith.

## SUMMARY OF ARGUMENT, PER JUDGE BREYER'S STANDING ORDER

This motion is made on the grounds that the claims administration process is complete and there is no just reason for delay in distributing the settlement funds to Class Members who submitted valid Proofs of Claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court-appointed Lead Plaintiff Otter Creek Partners ("Lead Plaintiff") submits this memorandum in support of its motion for entry of an Order: (i) approving the administrative determinations of the Claims Administrator, The Garden City Group, Inc. ("GCG"), accepting and rejecting Claims submitted herein, including GCG's recommendation as to the rejection of one Disputed Claim; (ii) authorizing the inclusion of Class Members who have filed late (but before August 23, 2006), but otherwise valid claim forms to participate in the settlements and receive a distribution of the Net Settlement Funds in accordance with the Court-approved Plan of Allocation of Combined Settlement Proceeds ("Plan of Allocation"); (iii) authorizing GCG to distribute the Net Settlement Funds to Authorized Claimants, based on the Court-approved Plan of Allocation; (iv) authorizing payment of $464,223.57 to GCG for its fees and expenses in connection with the administration of the settlements; (v) authorizing the Claims Administrator to destroy hard copy claim forms and supporting documents one year after distribution of the Net Settlement Funds, and to destroy electronic copies of the same three years after distribution of the Net Settlement Funds; (vi) retaining jurisdiction to consider any further applications concerning the administration of the settlements; and (vii) for such other and further relief as the Court deems appropriate.

I. BACKGROUND

This case was brought on behalf of the investors of Clarent Corporation ("Clarent" or the "Company") who lost millions of dollars due to the admitted accounting fraud that occurred at Clarent over six quarters in 2000 and 2001. This case has been extensively litigated before this Court for several years – including three consolidated complaints, multiple motions to dismiss, a motion for summary judgment, various other motions, a trial through to jury verdict, and, finally, approval of three settlements between the Class Members and various defendants.

The first settlement was reached on or about November 11, 2004, between Lead Plaintiff, on behalf of itself and the Class[1], and Clarent's primary legal advisor during the Class Period, Deborah Ludewig and Cooley Godward LLP (the "Cooley Defendants") for $2 million (the "Cooley Settlement"). The Court granted final approval of the Cooley Settlement on March 25, 2005.

The second settlement was reached on or about May 9, 2005, between Lead Plaintiff, on behalf of itself and the Class, and the Liquidating Trustee on behalf of Clarent, and the Individual Settling Defendants ("ISDs") (the "Company Settlement") for $6 million. The Court granted final approval of the Company Settlement on July 14, 2005.

The third and final settlement resulted from a four-week jury trial before this Court and a finding of liability against Clarent's former CEO, Jerry Chang. Beginning on or about January 24, 2005, the trial proceeded before this Court against Chang and Clarent's former outside auditor during the Class Period, Ernst & Young LLP ("E&Y"). On February 16, 2005, the jury returned a verdict of liability against Chang as to statements made by Chang regarding Clarent's second quarter 2001 financial results.[2] Following the jury verdict, Lead Plaintiff, on behalf of itself and the Class, and Chang reached a settlement for $900,000 (the "Chang Settlement"). The Court granted final approval of the Chang Settlement on July 14, 2005.

In sum, on behalf of the Class, Lead Plaintiff obtained settlement proceeds totaling $8.9 million, consisting of: (i) $2 million in cash obtained through the Cooley Settlement; (ii) $6 million in cash obtained through the Company Settlement; and (iii) $900,000 in cash obtained through the Chang Settlement.[3]

---

[1] The Class consists of all persons or entities who purchased or otherwise acquired Clarent common stock between March 29, 2001 and August 31, 2001 (for the Cooley Action) or between April 26, 2000 and August 31, 2001 (for the Clarent Action).

[2] As the Court is aware, the jury returned a verdict of no liability against E&Y, finding that it had made a material false statement regarding Clarent's second quarter 2001 financial results, but without the requisite scienter.

[3] Lead Plaintiff also obtained a Default Judgment against Matthew Chiang on May 31, 2005.

As explained below, the claims administration process of the settlements is now complete. After payment of taxes and Court-awarded attorneys' fees, and after earning interest for the benefit of the Class, the combined settlement funds, as of August 29, 2006, totaled over $6.4 million. There is no just reason to delay distribution of the settlement funds to Class Members who submitted valid Proofs of Claim.

## II. THE CLAIMS ADMINISTRATION PROCESS

As detailed in the accompanying Affidavit of Jennifer M. Keough ("Keough Affidavit"), in connection with the settlements and with the Court's approval, Lead Plaintiff retained GCG as the Claims Administrator and GCG mailed the Court-approved Notices and caused the publication of the Court-approved Summary Notices. Pursuant to the Court's Orders preliminarily approving of the settlements, all Class Members wishing to participate in the settlements were required to submit completed Proofs of Claim by March 4, 2005 (for the Cooley Settlement), and July 6, 2005 (for the Company and Chang Settlements). In total, 6,077 Proofs of Claim were submitted and GCG received and reviewed all submitted Claims. Keough Aff. ¶13. To the extent that a Claim was deficient in any regard, GCG attempted to resolve the deficiencies through numerous means, including multiple rounds of letters (when necessary) advising Claimants of deficiencies; and adequate time was spent communicating with Claimants and suggesting appropriate ways they could document their claims and participate in the settlement, through telephone calls and written letters. Keough Aff. ¶¶8-10, 20.

For each claim determined by GCG to be deficient, GCG notified the Claimant in writing of the deficiency, and advised the Claimant of possible ways to cure the deficiency. Where a Claimant failed to cure a deficient Claim after notice, GCG notified the Claimant of its administrative recommendation to reject the Claim. Keough Aff. ¶¶8-9. Claimants who submitted Claims that did not show any eligible transactions, such as Claims based on purchases outside of the Class Period, or purchases that did not result in a loss, were sent letters titled Notice of Ineligibility. Keough Aff. ¶10. Copies of sample deficiency and ineligibility letters are attached as Exhibit B to the Keough Affidavit.

GCG concludes, and Lead Plaintiff and Lead Counsel agree, that 2,935 Claims should be accepted, and 3,142 Claims should be rejected. The reasons for rejection include: (a) the Claim did not fit the definition of the Class (963 Claims); (b) the Claim is a duplicate Claim (69 Claims); (c) the deficiency was never cured (396 Claims); or (d) the Claim did not result in a loss according to the Plan of Allocation (1,714 Claims). Keough Aff. ¶14.

All deficiency and ineligibility letters advised Claimants that if the Claimant disputed GCG's administrative recommendation, the Claimant could request this Court's review of GCG's administrative recommendation. Keough Aff. ¶¶9-10. Only one of the provisionally rejected Claimants has requested this Court's review of GCG's recommendation that his claim be rejected (the "Disputed Claim"). Keough Aff. ¶10.

Lead Plaintiff now seeks approval of GCG's determination as to the acceptance and rejection of Claims, and further seeks the Court's judicial determination as to the one Disputed Claim.

A.  Undisputed Claims

GCG received 2,764 Claims that were valid in their entirety, and 171 Claims that were valid except that they were untimely, for a total of 2,935 provisionally accepted Claims. Keough Aff. ¶18. GCG and Lead Plaintiff have not recommended that any Claim be rejected solely because it was received after the submission deadline (but before August 23, 2006). Because of the time needed to process the large volume of Claims already received, Lead Plaintiff believes that no delay has resulted from processing these late-filed Claims. When the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the Net Settlement Funds solely because it was submitted after the cut-off date, as long as it was submitted while the Claims were still being processed. Accordingly, it is respectfully requested that this Court approve the administrative recommendation not to reject Claims submitted after the final July 6, 2005 deadline because of lateness, but before August 23, 2006.

It is respectfully submitted that the Court should approve the administrative recommendation of the Claims Administrator accepting and rejecting Claims as set forth in the Keough Affidavit.[4]

B.  One Disputed Claim

Only one Claimant (Claim Number 01020284) disputes GCG's administrative determination that he is ineligible to receive distributions from the settlements.[5] According to his Proof of Claim, the Claimant purchased *and sold* all of his Clarent stock prior to the end of the Class Period. As explained in paragraph 10 of the Keough Affidavit and Exhibit A thereto, this Claim was deemed ineligible pursuant to the Plan of Allocation which provides that if no Clarent common stock is held at the close of trading on August 31, 2001 (the end of the Class Period), the claim value is $0.

The Court previously approved of the Plan of Allocation which was prepared in consultation with Lead Plaintiff's damages expert and tracks the theory of damages asserted by plaintiffs. As explained in the motion for approval of the Plan of Allocation and the damages consultant's declaration submitted therewith, based on Lead Plaintiff's damages expert's review of the available information, he concluded that the decline in Clarent's stock price following the September 4, 2001 disclosure was directly linked to the alleged fraud. Accordingly, the Plan of Allocation is based on the price decline in Clarent's common stock price following the September 4, 2001 disclosure from a closing price of $5.37 per share on August 31, 2001 (the last closing price immediately prior to the trading halt) to $0.43 per share (the 90-day average closing price following the resumption of trading on January 20, 2002).

---

[4] Submitted with the Keough Affidavit as Exhibit C-1 and C-2 are computer printouts (by claim number for privacy reasons) listing all the Claims submitted for the settlements. Exhibit C-1 lists all the provisionally accepted Claimants and their calculated loss amounts under the Court-approved Plan of Allocation and Exhibit C-2 lists all the rejected or ineligible Claimants and shows the reason for rejection of the Claims.

[5] Copies of the correspondences with this Claimant (with personal information redacted) are attached to the Keough Affidavit as Exhibit A.

The disputing claimant sold his stock prior to the September 4, 2001 disclosure. Thus, consistent with the Court-approved Plan of Allocation, the disputing claimant's claim value is $0.

Lead Plaintiff hereby requests that the Court make the final determination as to the ineligibility of Claim Number 01020284 to receive distribution from the settlements, and recommends that the Court rule that the claim is not entitled to such distribution.[6]

### III. DISTRIBUTION OF NET SETTLEMENT FUNDS

The claims administration process has been completed. The proposed distribution of the Net Settlement Funds complies with the terms of the Stipulations of Settlement and the Plan of Allocation previously approved by this Court. Therefore, it is respectfully requested that the Court enter an Order authorizing the initial distribution of the Net Settlement Funds to the Authorized Claimants as listed on the file of accepted Claims submitted with the Keough Affidavit in proportion to their recognized loss amounts as shown therein.

In the event that there are funds remaining following the initial distribution, including due to uncashed checks after a substantial amount of time, Lead Plaintiff will seek Court permission for a second distribution to Class Members or donation as appropriate.

### IV. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

When granting preliminary approval of the settlements and ordering that Notice be issued, the Court previously ordered that all reasonable and necessary expenses incurred in identifying and notifying Class Members, as well as administering the Settlement Fund, shall be paid out of the settlement funds as provided in the Stipulations of Settlement. The Stipulations provide that the settlement funds shall be used "To pay the costs and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Class Combined Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow fees and costs, if any."

---

[6] Lead Counsel will serve this Claimant with the instant motion and supporting papers.

Lead Plaintiff requests that, as detailed in the Keough Affidavit, the Court authorize payment of $464,223.57 from the settlement funds to GCG for its fees and expenses incurred to date and expected to be incurred to complete the claims administration process in connection with the administration of the settlements. Keough Aff. ¶22. As described in the Keough Affidavit, GCG has performed and will perform the mailing and publishing of notices to the Class, the processing of the Claims, and the allocation and distribution of the available Net Cash Settlement Funds to Authorized Claimants.

## V.   CONCLUSION

Based on the foregoing and the entire record herein, Lead Plaintiff respectfully requests that the Court enter the [Proposed] Order Authorizing Distribution of Settlement Funds (submitted herewith): (i) approving the administrative determinations of the Claims Administrator, GCG, accepting and rejecting Claims submitted herein, including GCG's recommendation as to the rejection of one Disputed Claim; (ii) authorizing the inclusion of Class Members who have filed late (but before August 23, 2006), but otherwise valid claim forms to participate in the settlements and receive a distribution of the Net Settlement Funds in accordance with the Court-approved Plan of Allocation; (iii) authorizing GCG to distribute the Net Settlement Funds to Authorized Claimants, based on the Court-approved Plan of Allocation; (iv) authorizing payment of $464,223.57 to GCG for its fees and expenses in connection with the administration of the settlements; (v) authorizing the Claims Administrator to destroy hard copy claim forms and supporting documents one year after distribution of the Net Settlement Funds, and to destroy electronic copies of the same three years after distribution of the Net Settlement Funds; (vi) retaining jurisdiction to consider any further applications concerning the

\\
\\
\\
\\
\\

administration of the settlements; and (vii) for such other and further relief as the Court deems appropriate.

Dated: October 5, 2006

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP

_____
NIKI L. MENDOZA

ALAN SCHULMAN
ROBERT S. GANS
BLAIR A. NICHOLAS
NIKI L. MENDOZA
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Lead Plaintiff Otter Creek Partners and Lead Counsel for the Class*

MOTION FOR ENTRY OF ORDER AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUNDS                                -8-
Master File No. C-01-3361 CRB (JCS)